

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-06-00150-CR

_____

TOMMY WALTER DARLING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Eighth Judicial District Court
Hopkins County, Texas
Trial Court No. 0518221

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

In Tommy Walter Darling's jury trial for the charge of indecency with a child arising in 2004, the complainant's trial testimony provided no evidence that Darling had been indecent with the complainant.[1] The young girl testified that Darling "touched" her only once and did not detail how or where he touched her, or provide any information to suggest that this single touch was in any way indecent.

Then there was the videotape of the complainant's forensic interview, during which she said the "touching" occurred a "lot of times." This videotape is marginally more detailed than her testimony—but only marginally. The interviewer resorted to leading her into disclosing sexual contact; the complainant certainly did not volunteer any critical information in the interview which lasted just under an hour.

On the other hand, there were the accompanying charges[2] alleging Darling's sexual contact with young girls in 1993 and 1995—charges which were tried with this charge, in spite of Darling's motion to sever the trial of this charge from the trial of the others. In stark contrast to the marginal evidence on this charge, the evidence on the 1993 and 1995 aggravated sexual assaults of children was corroborated and compelling.

---

[1]Darling did not challenge the legal or factual sufficiency of the evidence in this case.

[2]Darling's appeals of the accompanying four convictions for aggravated sexual assault of a child are companion cases in this Court: they bear cause numbers 06-06-00148-CR, 06-06-00149-CR, 06-06-00151-CR, and 06-06-00152-CR. By our opinions issued this day, we affirm the judgments in those cases, which mete out four life sentences.

2

The jury found Darling guilty of indecency with a child in this case and guilty on the four accompanying charges of aggravated sexual assault of other children. In this appeal, Darling raises several issues. For the reasons set forth below, though we overrule most of Darling's appellate issues, we conclude the trial court harmfully erred in denying Darling's severance motion. Therefore, we reverse the trial court's judgment and remand these proceedings for a new trial on this charge.

*(1)     Admission of Counseling Records Was Not an Abuse of Discretion*

Darling complains the trial court erred by admitting the complainant's counseling records pursuant to the medical records exception to the hearsay rule. Darling contends State's Exhibit 4 was not covered by the medical diagnosis or treatment exception because the statements contained in the exhibit "were made over an extended period of counseling and did not possess the guarantees of trustworthiness on which the medical diagnosis and treatment exception to the hearsay rule is founded." In this case, the counselor diagnosed the complainant with having post-traumatic stress disorder. Darling suggests such a diagnosis must necessarily have been made "long before" the July 7, 2006, counseling session—a counseling session that Darling characterizes on appeal, without any citation to the record for such an assertion, as a counseling session that "was simply preparing the complainant to testify at trial." Darling also attempts to factually distinguish the facts of this case from those facts in *Wilder v. State*, 111 S.W.3d 249 (Tex. App.—Texarkana 2003, pet. ref'd), on the ground that the *Wilder* opinion failed to specify at which stage of therapy the child's outcry statements were made.

3

The State counters that "[t]he incriminating statements contained within the records were made by [the complainant] during counseling sessions and were necessary to her diagnosis and treatment." This position on appeal is consistent with the State's position at trial, when the State had argued the complainant's recorded statements to the counselor were made during the course of various "therapies" (including play therapy) meant to assist the child in treatment of her psychological trauma. "[T]his witness articulated that clearly, that all of those things [she said to the counselor that were written in State's Exhibit 4], all of those statements are things utilized within the field of play therapy, generally, for the others. All of those things go to treatment."

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Id.* at 255.

We agree that the State's rationale for admission supports the trial court's decision to admit State's Exhibit 4 and that such a justification falls within the wide zone of reasonable disagreement permitted under the applicable standard of review. No abuse of discretion has been shown.

*(2)     There Was No Error in Admitting Expert's Testimony That Abuse Was Not "Suggested" to the Complainant*

Darling also contends the trial court erred by admitting testimony from Pennye West (the complainant's counselor) that she did not believe that the complaint's outcry was the result of someone suggesting she make such an outcry.

A trial court does not err when it admits an expert witness' opinion testimony that a child did not exhibit indications of having been coached to make a false accusation of sexual abuse. *Reynolds*

4

*v. State*, 227 S.W.3d 355, 366 (Tex. App.—Texarkana 2007, no pet.); *see also Perez v. State*, 925 S.W.2d 324, 328 (Tex. App.—Corpus Christi 1996, no pet.). Such testimony does not constitute a comment on the child's ultimate truthfulness. *Reynolds*, 227 S.W.3d at 366. We see no compelling reason to retreat from that position in this case. We overrule this issue.

*(3)    Admitting Statements Made to the Nurse Examiner Was Not Error*

Darling contends in two issues that the trial court erred by admitting statements the complainant made to a sexual-abuse nurse, Kim Bassinger, regarding sexual abuse because these statements were not admissible under the hearsay exception for medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). The evidence at issue was contained in State's Exhibit 2 and in Bassinger's trial testimony. Darling objected to this evidence on the ground the State had failed to show that the complainant had ever been told of a "particularized need for truthfulness for purpose of medical diagnosis or treatment." Darling specifically directed the lower court's attention to *Wright v. State*, 154 S.W.3d 235 (Tex. App.—Texarkana 2005, pet. ref'd). The trial court overruled Darling's objection and admitted the evidence.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Wilder*, 111 S.W.3d at 255.

Before the trial court rendered its decision on whether to admit or exclude this evidence, the State asked Bassinger, "Did you—from your interactions with [one of the complainants] did you take

5

her to understand that she needed to be truthful so that you could help her and examine her properly?" Bassinger replied, "Yes."

This testimony supports the trial court's implied finding that the State had satisfied the evidentiary prerequisites set out in *Wright* for admission of the child's statements to a nurse examiner pursuant to Rule 803(4) of the Texas Rules of Evidence. No abuse of discretion has been shown. We overrule these issues.

*(4)     There Was No Error in Admitting Expert Testimony That Touching Was Not Innocent*

Darling contends the trial court abused its discretion by admitting testimony, over his objection, that none of the conduct prosecuted by the State involved "innocent" touching. The State counters that the trial court's admission of the testimony was not an abuse of discretion because the State's questions did not seek to provoke an opinion about the truthfulness of the victim, but to substantively establish that the touching was not innocent.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995); *Malone v. State*, 163 S.W.3d 785, 793 (Tex. App.—Texarkana 2005, pet. ref'd); *Hardin v. State*, 20 S.W.3d 84, 90 (Tex. App.—Texarkana 2000, pet. ref'd).

> [E]xpert testimony, by its very nature may tend to show another witness either is or is not telling the truth. That fact does not alone render such testimony inadmissible. The test is not whether opinion testimony embraces an ultimate fact in the case, for that is the expected or desired result of specialized testimony. The test, restated, is whether the expert's testimony, if believed, will assist the untrained layman trier of fact to understand the evidence or determine a fact in issue, Rule 702, supra, and

6

whether it is otherwise admissible under general rules of relevant admissibility. To the extent the evidence is relevant to a matter or issue in the case, our evidentiary rules now require the party opposing the proffered evidence not only demonstrate the negative attributes of the evidence but also show how these negative attributes substantially outweigh the probative value of the evidence. As we recently noted in *Montgomery v. State* (No. 1090-88 and 1091-88, delivered May 30, 1990) (not yet reported), Texas evidentiary law has been significantly altered with respect to the admission of relevant probative evidence since the adoption of our new rules of evidence. . . .

*Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990).

The relevant segment of the record contains the question, objection, ruling, and answer:

Q:      Is there any possibility, from your sessions with her, these extensive time periods, that maybe she's just misinterpreting an innocent touch there?

A:      No, sir.

        MR. JOHNSON: Judge, I'm going to object to that. It goes to an ultimate issue.

        . . . .

        THE COURT: Overruled. You may answer.

        . . . .

A:      . . . I do not believe that it was an innocent touch that she was describing.

In making its ruling, the trial court impliedly determined that the issue at hand was something other than the truthfulness of the complainant: in fact, the question inquired whether the touching described by the child was innocent or malevolent. The trial court could have reasonably determined that such testimony—if believed—would assist this lay jury in determining the precise fact at issue.

7

And such testimony was relevant to the central issue in the case. The trial court further could have reasonably determined that the probative value of such testimony was not substantially outweighed by the testimony's negative attributes. Accordingly, we cannot say the trial court's admission of such testimony constituted an abuse of discretion.

*(5)     Failure to Sever This Charge from the Other Charges Was Harmful Error*

Finally, Darling contends the trial court harmfully erred by denying his request to sever the trial of this case from the trial of his other charges. We agree.

Under certain circumstances, our law permits courts to sever the trials of a defendant facing multiple charges. The current applicable provision of the Texas Penal Code sets out severance rights:

> (a) Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to severance of the offenses.
>
> (b) In the event of severance under this section, the provisions of Section 3.03 do not apply, and the court in its discretion may order the sentences to run either concurrently or consecutively.
>
> (c) The right to severance under this section does not apply to a prosecution for offenses described by Section 3.03(b) unless the court first determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires.

TEX. PENAL CODE ANN. § 3.04 (Vernon Supp. 2008). The right to a severance under the current version of Section 3.04 is absolute, *except for joinder of sexually based offenses that are governed by Section 3.03* of the Texas Penal Code. *See Scott v. State*, 235 S.W.3d 255, 257–58 (Tex. Crim.

8

App. 2007) (analyzing applicable exceptions to mandatory severance). Section 3.03 concerns sentences for offenses arising out of the same criminal episode. *See* TEX. PENAL CODE ANN. § 3.03 (Vernon Supp. 2008). Additionally, if an accused waives that severance right, or if the defendant fails to request a severance, the joinder and prosecution of multiple indictments in a consolidated trial is permissible. *Milligan v. State*, 764 S.W.2d 802, 803 (Tex. Crim. App. 1989); *Johnson v. State*, 509 S.W.2d 322, 323 (Tex. Crim. App. 1974). For purposes of whether to sever the trials under the current Texas Penal Code, the term "criminal episode" means either "the offenses [sought to be joined] are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a scheme or plan" or "the offenses [sought to be joined] are the repeated commission of the same or similar offenses." TEX. PENAL CODE ANN. § 3.01 (Vernon 2003).

The charges with which this 2004 indecency charge was tried concerned conduct alleged to have occurred between 1993 and 1995. The evidence at trial showed those crimes involved a different manner of commission, involved a different degree of severity, and involved different victims. There was no evidence adduced at trial to suggest any direct linkage between the commission of this indecency crime and those earlier time periods. Accordingly, under Sections 3.03 and 3.04 of the Texas Penal Code, the trial court's denial of Darling's severance motion was not supported by any evidence to demonstrate the necessary statutory link of an ongoing criminal episode between 1995 and 2004. *See* TEX. PENAL CODE ANN. §§ 3.03, 3.04. We therefore conclude the trial

9

court erred by denying Darling's motion to sever the trial of his 2004 indecency case from the trial of his earlier offenses.

This error, to be reversible, must be harmful. "A trial judge's failure to grant a mandatory severance under Section 3.04 is subject to a harm analysis, and the error is harmless if it did not adversely affect the defendant's substantial rights." *Scott*, 235 S.W.3d at 257 (citing *Llamas v. State*, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000); *and referencing* TEX. R. APP. P. 44.2(b)); *see also Llamas v. State*, 991 S.W.2d 64, 68 (Tex. App.—Amarillo 1998), *aff'd*, 12 S.W.3d 469 (Tex. Crim. App. 2000). "Substantial rights are not affected 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect." *Owens v. State*, 135 S.W.3d 302, 310 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). "To judge the likelihood that harm occurred, appellate courts must consider everything in the record including all the evidence admitted at trial, the closing arguments, and . . . the jurors' comments during voir dire." *Scott*, 235 S.W.3d at 257 (quoting *Llamas*, 12 S.W.3d at 470); *see also Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (requiring appellate harm analysis when trial court erred by denying severance motion).

As we mentioned at the beginning of this opinion, the complainant's trial testimony, standing alone, failed to prove the State's case. She offers no testimony that Darling used any body part or any foreign object to touch her sexual organ, "privates," or other euphemism for the female sexual organ. We doubt that one could even *infer* from just this trial testimony that there was any type of

10

sexual contact: she uses no words, child-like or otherwise, to describe her sexual organ or any sexually sensitive area to suggest where Darling touched her, she offers nothing approaching any suspicious manipulation or exploration of her person by Darling.

Admittedly, there was more evidence admitted. The tape of the complainant's forensic interview was played for the jury. In that, she says the touching occurred more than once. This videotape is marginally more detailed than her testimony, but is subject to the weakness that the interviewer seemed to be forced to lead the complainant into making any damning disclosures:

Q: He was doing something to a private place on your body?

A: Yeah.

. . . .

Q: Did Tommy do something to your private on top of your clothes or underneath your clothes?

A: I don't want to say.

Q: Under your clothes?

A: Yeah.

. . . .

Q: When he touched your private, what did he touch your private with?

A: [Complainant only points to a boy's hand that appears in a stick figure picture, and that gesture is described on tape by the forensic interviewer.]

. . . .

11

Q: When his hand touched your private, did it go in your private or touch the skin?

A: Skin.

. . . .

Q: Did he do this once or several times?

A: A lot of times.

During the interview, the complainant can be seen using a picture to explain where Darling did something to her body. She draws a black circle around something, but does not want to tell the interviewer what she calls this body part. She agrees to call it her private after the interviewer finally suggests this answer.

During trial, Darling repeatedly attacked the credibility of the complainant's testimony. During closing argument, he made lengthy and repeated explanations as to why he believed the complainant in this case had been "led" by her mother, by her forensic interviewing, and/or by her therapist into making this outcry of abuse. Yet, why was the jury persuaded otherwise in this case? We think it was the probable effect of the overwhelming and emotionally powerful evidence the State brought forth to support Darling's convictions in the other four, aggravated-sexual-assault cases—cases which were improperly joined to the trial of this indecency charge.

Therefore, after reviewing the record as a whole with respect to the State's evidence in this case, we cannot say with fair assurance that the erroneous denial of Darling's severance motion did not affect his substantial rights or had but a slight effect on the State's case for conviction. The

12

evidence supporting conviction in this case depended greatly on how the jury evaluated the complainant's credibility both at trial and during the forensic interview. If the jury had found the complainant's outcry to be incredible, or if the jury believed the outcry came only from suggestions by others surrounding her, then the jury might have voted to acquit Darling on this charge. But it would be nearly insurmountable for a rational jury to make such a finding in light of the overwhelming evidence supporting guilt in the other cases. The likelihood that a jury would find the complainant in this case to be believable was greatly increased once her story was backed up by other victims who were older and who (unlike the complainant in this case) could graphically and compellingly describe their own abuse. Armed with such additional information, the case for convicting Darling in this case must have increased exponentially. That logical conclusion compels us to further conclude the trial court's erroneous denial of Darling's severance motion had more than a mere slight effect in this case. Rule 44.2(b) of the Texas Rules of Appellate Procedure therefore

mandates that we vacate the trial court's judgment and remand this case for a new trial.  *See* TEX. R.

APP. P. 44.2(b).


                                                    Josh R. Morriss, III
                                                    Chief Justice


Date Submitted:      April 2, 2008
Date Decided:       August 13, 2008

Publish