In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00087-CR


______________________________




TREOLA HAWKINS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 07F0146-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Treola Hawkins appeals from her conviction by a jury for murder. She was sentenced to
thirty years' imprisonment. The evidence shows that she came home drunk and began fighting with
her long-time companion. During the course of the fight, she hit him with a hammer, then with a
candlestick, and ultimately cut his arm with a box cutter. The cut was deep enough to sever a major
artery, and he bled to death. 

 Hawkins contends that the court abused its discretion by ordering that she be shackled during
voir dire and during the trial, without adequate cause. She also argues that the trial court erred by
allowing a police officer to testify that the wounds to the victim's arms appeared to be defensive
wounds. We affirm the judgment of the trial court. 

I. Shackling 

 We first address the shackling of the defendant. We addressed this constitutional protection
in detail in Ziolkowski v. State, 223 S.W.3d 640 (Tex. App.--Texarkana 2007, pet. ref'd). (1) In
Ziolkowski, decided April 3, 2007, we reiterated the guiding precepts and rules governing the
shackling of prisoners when they are brought to court and found error, but concluded that it was
harmless. 

 The underlying basis for the procedural requirements is the recognition that, when a
defendant is viewed by the jury in handcuffs or shackles, his or her presumption of innocence is
seriously infringed. Long v. State, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991). Only in rare
circumstances is shackling called for, and in such event, the record must detail the grounds for such
action. Id.; Marquez v. State, 725 S.W.2d 217, 229 (Tex. Crim. App. 1987); Ziolkowski, 223 S.W.3d
at 642. The trial court must set forth with specificity the reasons supporting its decision to restrain
the defendant. Cooks v. State, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992) (citing Long, 823
S.W.2d at 282; Marquez, 725 S.W.2d at 228). On appeal, the role of an appellate court is to
determine whether the trial court abused its discretion in authorizing the restraint. Long, 823 S.W.2d
at 282. 

 The record shows that Hawkins is a forty-one-year-old, five-foot-one-inch female, with no
prior felony convictions who sought to be placed on community supervision. Defense counsel
objected at length, arguing that a leg brace that the court ordered used, evidently regularly, was too
large because of her small stature. Counsel pointed out that Hawkins had no prior convictions, had
been in custody for nearly a year at the time of trial, and had exhibited no behavior during that entire
time that could justify the use of shackles. 

 The trial court stated that it was aware of the brace situation and insisted that pants could be
used so that the shackles would not be visible (but that, as a tactical matter, counsel had provided
her with a dress for the trial--thus improperly attempting to shift responsibility for any viewing of
the unjustified restraints to defense counsel). The court then opined that, because of the nature of
the charge,

 it is a serious enough of an issue that courtroom security must always be kept in
mind, and that when I weigh the need for courtroom security as well as the steps
taken to ensure that the jury won't see it, the Court is satisfied that her due process
rights are being protected and would encourage Ms. Hawkins, of course, to take
every step that she can to see to it that they don't see it by keeping her legs under the
table.

 The trial court did not make the findings required in order to justify using shackles, and there
is no evidence that could support such a ruling. A mere statement that the offense is violent is not
sufficient. Long, 823 S.W.2d at 283.

 The trial court abused its discretion by shackling the defendant. This error is a constitutional
one as it pertains to the defendant's presumption of innocence. Hence, we must reverse unless we
determine beyond a reasonable doubt that the error did not contribute to her conviction. See Tex.
R. App. P. 44.2(a).

 We recognize that a defendant's right not to be shackled also encompasses: (1) the
courtroom's formal dignity; (2) the respectful treatment of a defendant; (3) embarrassment and
distraction to the defendant; (4) the physical burden and pain of restraints; and (5) interference with
a defendant's thought process. Deck v. Missouri, 544 U.S. 622, 626-27 (2005) (also stating that
routine shackling is specifically prohibited); United States v. Durham, 287 F.3d 1297, 1304 (11th
Cir. 2002); Brown v. State, 877 S.W.2d 869, 871 (Tex. App.--San Antonio 1994, no pet.).

 In reviewing the implications of these issues in a harm analysis, the court has suggested that
harm to a defendant who is restrained during trial can be shown because: (1) of prejudice felt by
jurors who conclude that, because a defendant is shackled, the court has already decided that he or
she is guilty, dangerous, and untrustworthy; (2) a restraint may interfere with the defendant's mental
faculties and ability to communicate with counsel during trial; and (3) restraints are an affront to a
court and its proceedings. Cox v. State, 931 S.W.2d 349, 353 (Tex. App.--Fort Worth 1996), pet.
dism'd, improvidently granted, 951 S.W.2d 5 (Tex. Crim. App. 1997).

 When performing a harm analysis, the Texas Court of Criminal Appeals has held that the
following  factors  are  to  be  considered:  1)  the  source  of  the  error;  2)  the  nature  of  the error;
3) whether the error was emphasized and its probable collateral implications; 4) the weight a juror
would probably place on the error; and 5) whether declaring the error harmless would encourage
the State to repeat it with impunity. Orona v. State, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). 
No single factor is dispositive. Instead, the existence and severity of these factors are indicative of
the harm caused by the improper conduct. Wilson v. State, 938 S.W.2d 57, 61 (Tex. Crim. App.
1996).

 In this case, only the first, second, and fifth factors of the harm analysis construct are
implicated. The source of the error was the court itself. We have previously stated, and reiterate
here, that this alone is of substantial importance. See Ex parte Werne, 118 S.W.3d 833, 837-38
(Tex. App.--Texarkana 2003, no pet.); see also Davis v. State, 195 S.W.3d 311, 319 (Tex.
App.--Houston [14th Dist.] 2006, no pet.). 

 There is no doubt that the nature of the error is constitutional--this error involves the
bedrock of our jurisprudence--the concept of due process provides that no action shall be taken
which will have the effect of infringing on the basic notion that a defendant is presumed to be
innocent until proven guilty beyond a reasonable doubt. 

 However, the record does not show that jurors saw Hawkins in the leg brace, and thus no
evidence would lead the jury to infer that the shackles were a comment by the trial court on her guilt,
danger, or untrustworthiness. Nor is there any evidence or argument Hawkins was hampered in her
ability to communicate with her trial attorney. There is no concrete indication that the leg brace was 
actually visible before the jury. Thus, there is no indication of an offense to the dignity and decorum
of the courtroom proceedings. As a result, absent any evidence the jury actually saw the leg brace,
we conclude, beyond a reasonable doubt, that Hawkins did not suffer harm. (2) 

 The final factor is whether we should reverse this case to assure this error will not be
repeated. Our judicial system rests on our trial courts' timely and correct application of the law; not
merely the correction of errors by superior courts. Since this is not the first time this issue has been
raised from the same trial court, we had concern that this practice had become a routine in that court. 
It is now represented to us that the procedures in that court have been formally changed in order to
comply with the constitutional requirements on this issue. With that assurance, we find it is
unnecessary to reverse this case on the basis that an affirmance would lead to a repetition of the
error. We find the error in this instance to be harmless. 

 We overrule the contention of error.

II. Improper Expert Testimony 

 Hawkins next contends that the trial court erred by allowing police officer Mark Sillivan to
testify over objection that wounds on the arms of the victim were consistent with him raising his
arms in a defensive manner. Sillivan had been qualified as an expert in the area of crime scene
investigation. On the night of the murder, Sillivan observed and made photographs of the wounds
found on the victim's body. 

 On appeal, Hawkins argues that the testimony was speculative and outside the scope of
Sillivan's expertise pursuant to Rule 702 of the Texas Rules of Evidence. See Tex. R. Evid. 702. 
We review a trial court's decision to admit or exclude evidence for abuse of discretion. Alvarado
v. State, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995); Darling v. State, No. 06-06-00150-CR, 2008
WL 3367553, at *3 (Tex. App.--Texarkana Aug. 13, 2008, pet. filed).

 In this case, Sillivan was properly qualified as a forensic and fingerprint expert in reviewing
crime scenes. Although the State suggests that his qualifications are sufficient to justify his
testimony regarding the physical aspects of injuries sustained during the course of a crime, our
review of his qualifications does not reveal special credentials to speak as an expert about wound
patterns. But in proper instances, lay witnesses may express opinion testimony. Tex. R. Evid. 701. 

 Lay witnesses may testify to their opinions or inferences which are (a) rationally based on
the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the
determination of a fact in issue. Id. 

 A distinct line cannot be drawn between lay opinion and expert testimony because all
perceptions are evaluated based on experiences. However, as a general rule, observations which do
not require significant expertise to interpret and which are not based on a scientific theory can be
admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness
has experience or training. Additionally, even events not normally encountered by most people in
everyday life do not necessarily require the testimony of an expert. The personal experience and
knowledge of a lay witness may establish that he or she is capable, without qualification as an expert,
of expressing an opinion on a subject outside the realm of common knowledge. United States v.
Paiva, 892 F.2d 148, 157 (1st Cir. 1989). It is only when the fact-finder may not fully understand
the evidence or be able to determine the fact in issue without the assistance of someone with
specialized knowledge that a witness must be qualified as an expert. Osbourn v. State, 92 S.W.3d
531, 537 (Tex. Crim. App. 2002).

 Here, the evidence established that Sillivan was a trained investigator of crime scenes. His
training included latent fingerprint examination, forensic aspects of death investigation, sketching,
and the handling of evidence. He further testified that he has observed other instances of defensive
wounds during his career. His testimony was that the wounds on the victim were consistent with
other defensive wounds he had observed. We find this observation did not require significant
expertise to interpret, did not rely on a scientific theory, and was admissible under Rule 701 as lay
opinion testimony even though Sillivan had some technical training. See id. Courts have admitted
a variety of opinion evidence from peace officers and lay persons when the evidence meets the
requirements of Rule 701. See Hollis v. State, 219 S.W.3d 446 (Tex. App.--Austin 2007, no pet.)
(testimony of peace officer that defendant had blisters and discolorations on his hands indicating
methampethamine exposure); Williams v. State, 191 S.W.3d 242 (Tex. App.--Austin 2006, no pet.)
(officer with some training allowed to give lay opinion that defendant did not exhibit signs of one
with mental health issue); In re J.C., 892 S.W.2d 87 (Tex. App.--El Paso 1995, no pet.) (testimony
of lay person that bruises appeared to be one day old admissible since witness had recent personal
experience with bruising). The trial court did not abuse its discretion in allowing this testimony. 

 Even if this evidence had been inadmissible, it did not constitute reversible error. In our
review of nonconstitutional error, we are to disregard errors, defects, irregularities, or variances that
do not affect substantial rights of the accused. Tex. R. App. P. 44.2(b). A "substantial right" is
affected when the error had a substantial and injurious effect or influence in determining the jury's
verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); see Tex. R. App. P. 44.2(b). 
If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect,"
we must conclude that the error was not harmful and allow the conviction to stand. Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

 Those wounds had previously been discussed in detail by the pathologist who had performed
the autopsy of the victim's body. She testified to the existence of two very small and very superficial
lacerations on the victim's left forearm. In response to questions propounded by the State, she
testified that the wounds could be considered defensive based on their location, but one could not
be sure.

 Thus, we have a qualified expert testifying that the lacerations were in the proper location,
and might have been defensive wounds, and a police officer testifying similarly that they were
consistent with defensive wounds. 

 Under this state of the record, we do not find that the admission of testimony by the officer
that was very similar to the pathologist's testimony was such as would affect a "substantial right" of
the defendant, i.e., one that had a substantial and injurious effect or influence on the jury when
reaching its verdict. See King, 953 S.W.2d at 271; see also Tex. R. App. P. 44.2(b).




 We affirm the judgment. 

 

 

 Jack Carter

 Justice


Date Submitted: December 23, 2008

Date Decided: January 7, 2009


Do Not Publish 
1. We most recently addressed this issue in Austin v. State, No. 06-07-00161-CR, 2008 Tex.
App. LEXIS 8630 (Tex. App.--Texarkana Nov. 18, 2008, no pet. h.) (mem. op., not designated for
publication).
2. We again point out to the trial bench that this is a risky practice. If there is evidence that a
jury saw the restraints, it very well might cause the jurors to conclude the defendant was dangerous
and guilty, which in all likelihood would require a reversal of the conviction, unless the situation
involved the "rare" case where a necessity for restraint existed and the trial court specified such
reasons in the record.