

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00613-CR
### NO. 02-12-00614-CR
### NO. 02-12-00615-CR

JAMES RIEMER                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

## FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In two points, Appellant James Riemer appeals his convictions for indecency with a child, aggravated sexual assault of a child, and continuous

---

[1]*See* Tex. R. App. P. 47.4.

sexual abuse of a child, complaining that the trial court abused its discretion by refusing to sever the indecency case from the other cases. We affirm.

## II. Factual and Procedural Background

Riemer was charged with two counts of indecency with a child involving Linda,[2] his stepdaughter, and two counts of aggravated sexual assault of a child and one count of continuous sexual abuse of a child involving June, his biological daughter. The trial court denied Riemer's motion to sever, in which he argued that the complainants were different, that the instances involving each complainant purportedly occurred at different times, and that joinder of the offenses would create unfair prejudice against him by bolstering each witness's credibility. The trial court denied the motion to sever.

According to Linda, in 2000, when she was around eight or nine years old, Riemer began inappropriately touching her while her mother Kathy worked the night shift. One night, frightened by a storm, Linda went to Riemer's room and asked if she could sleep there. He agreed, and when she woke up, she was on her stomach, her pants and underwear were around her ankles, and Riemer, who was not wearing pants, was on top of her. Linda said that Riemer's penis touched her "butt cheek," his legs were on either side of her body, and "[f]or lack of a better term, he was humping [her]." Linda also described that on more than one occasion, Riemer put his hand down her pants, beneath her underwear, and

---

[2]We use pseudonyms to protect the complainants' identities. *See Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005).

2

held her "butt cheek" and took her hand and placed it on his penis. She said that the "humping" activity happened again a few weeks or months after the first time and that the second time was the last time Riemer did anything to her. Linda stated that during this time period, which was no more than a few months, Riemer did "special stuff" for her, such as letting her watch special shows on television or saying that she was his favorite.[3] Linda said that after she learned at school that what Riemer was doing was wrong, she tried to stay away from him.

According to June, in 2002, when she was around four years old, Riemer began sexually assaulting her and continued to do so for several years, totaling over 200 instances, until she was around eleven years old. As with Linda, June stated that the first assault happened one night while Kathy was working the night shift. June was scared of a storm, went to Riemer's room, and asked to get into his bed. After she climbed into bed with him, Riemer pulled down her pants and underwear, pulled down his clothes, and put his penis into her anus. June said that it hurt, that Riemer told her that she could not tell anyone, and that it was their secret. When she was eight or nine years old, he began putting his penis into her female sexual organ. June said that she did not tell anyone because she was afraid that no one would believe her. June said that Riemer

[3]Adam, Linda's brother and Riemer's stepson, testified that during this time period, Riemer had shown some favoritism to Linda but not to the same extent as he showed June later on, buying things for June and spending more time with her than with the other children.

treated her differently from the other children, buying her dolls and cheap jewelry, and that he stopped sexually abusing her when she was eleven years old. [4]

After Riemer separated from Kathy in 2004, June and her brothers would visit him overnight either every weekend or every other weekend until June's March 2011 outcry.[5] June's half-brother Adam noted that June and Riemer had slept in the same bed together every night as far as he could remember but when Adam said something to Riemer about it, Riemer told him that it was none of his business and not to play parent. Both Adam and June's twin brother Jack testified that it was strange that Riemer would let June run around the apartment wearing nothing but her underwear when she was eight or nine years old.

In April 2011, after she learned of June's outcry, Linda reported to the Denton County Sheriff's Department that she had been sexually assaulted as a child. Linda said that she had not told anyone after the first time it happened because she had been young and scared.

---

[4]June agreed during cross-examination that she had told other people that the abuse had stopped when she was ten years old and that she had been wrong when she had told others that the time period was from four years old to eight years old. June also stated that she generally had a bad memory.

[5]Following her outcry to a teacher, June engaged in self-mutilation and was diagnosed with post-traumatic stress disorder and hallucinations.

4

The State had filed a motion for cumulative sentences, and after the jury found Riemer guilty of each of the offenses and assessed his punishment, the trial court set the sentences to run consecutively.[6] This appeal followed.

### III. Severance

In what amounts to a sole point, Riemer argues that the trial court erred by denying his motion to sever the indecency case from the aggravated sexual assault and continuous sexual abuse cases. Specifically, he complains that the cases did not involve the same criminal episode or same transaction because they involved different victims of different ages, different manners of commission, different time frames, and no direct linkage between the acts during the different time frames.

A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode. Tex. Penal Code Ann. § 3.02(a) (West 2011). "Criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person, when they are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common

---

[6]The trial court specified that the life sentence in the continuous sexual abuse case would run first, followed by the life sentence imposed under count 1 of the aggravated sexual assault case, followed by the life sentence imposed under count 2 of the aggravated sexual assault case, followed by the twenty-year sentence imposed under count 1 of the indecency case, followed by the twenty-year sentence imposed under count 2 of the indecency case. The jury also assessed $10,000 fines for each conviction.

5

scheme or plan or the offenses are the repeated commission of the same or similar offenses. *See id.* § 3.01 (West 2011). Penal code section 3.01 "does not require that all the offenses arising out of the same criminal episode occur within any particular time frame." *Casey v. State*, 349 S.W.3d 825, 831 (Tex. App.—El Paso 2011, pet. ref'd).

A defendant's right to sever two or more offenses that have been consolidated or joined for trial does not apply to a prosecution for indecency with a child or aggravated sexual assault of a victim under seventeen years of age unless the court determines that the defendant or the State would be unfairly prejudiced by the joinder. *See* Tex. Penal Code Ann. § 3.04(c) (West 2011); *Matthews v. State*, 152 S.W.3d 723, 730 (Tex. App.—Tyler 2004, no pet.). There is no presumption that the joinder of cases involving aggravated sexual assault against different children is unfairly prejudicial, and we review a trial court's denial of a motion to sever for an abuse of discretion. *Matthews*, 152 S.W.3d at 730–31 (citing *Salazar v. State*, 127 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd)). The accused bears the burden to show how he would be unfairly prejudiced by consolidation. *See Lane v. State*, 174 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd), *cert. denied*, 549 U.S. 911 (2006).

6

## A. Criminal Episode or Transaction

"Criminal episode" and "criminal transaction" are not synonymous. *See Cobb v. State*, 85 S.W.3d 258, 266 (Tex. Crim. App. 2002), *cert. denied*, 537 U.S. 1195 (2003). Rather, a single "criminal episode" under penal code section 3.01 includes the repeated commission of the same or similar offenses, any offenses committed according to a common scheme or plan, and all offenses that form a part of one criminal "transaction." *Id.* A "criminal transaction," on the other hand, is a continuous and uninterrupted chain of conduct occurring over a very short period of time in a rapid sequence of unbroken events. *Smith v. State*, 297 S.W.3d 260, 275 (Tex. Crim. App. 2009), *cert. denied*, 559 U.S. 975 (2010). While the events of this case may not fit within the definition of a criminal transaction as set out above, they fit squarely within the definition of criminal episode with regard to the repeated commission of the same or similar offense. *See* Tex. Penal Code Ann. § 3.01; *Cobb*, 85 S.W.3d at 266.

Nonetheless, Riemer, relying on *Darling v. State* (*Darling I*), 262 S.W.3d 920 (Tex. App.—Texarkana 2008, pet. ref'd), argues that his cases should have been severed because of the lack of "linkage" between them. In *Darling I*, after the trial court denied a motion to sever, the appellant was tried on a 2004 indecency charge involving one young girl and on charges of having committed the aggravated sexual assault of other young girls in 1993 and 1995. *Id.* at 922–23. The Texarkana court found that the trial court had erred by denying severance of the 2004 charge because not only did the 2004 offense and the

1993 and 1995 offenses involve different manners of commission, different degrees of severity, and different victims but also there was no evidence adduced at trial to suggest any direct linkage between the commission of the 2004 indecency crime—for which the evidence was scant[7]—and the earlier aggravated sexual assault crimes, for which the evidence of guilt was overwhelming.[8] *Id.* at 926–28. Specifically, there was no showing that the 1990s victims and the 2004 victim were in any way connected, there was nearly a decade separating the occurrences, and the evidence supporting the earlier offenses only bolstered the paucity of evidence supporting the 2004 offense. *Id.* at 922–23, 927–28.

In contrast to *Darling I*, and much more similar to *Darling II*, in which the court held that failure to sever the 2004 offense did not affect Darling's

---

[7]As noted by the Texarkana court, the 2004 complainant testified "that Darling 'touched' her only once and did not detail how or where he touched her, or provide any information to suggest that this single touch was in any way indecent." 262 S.W.3d at 922–23. In the videotape of her forensic interview, the 2004 complainant said that the "touching" occurred "a lot of times," and her description in the interview was only marginally more detailed than her testimony. *Id.* The court observed that the interviewer resorted to leading the complainant into disclosing sexual contact and that the complainant "certainly did not volunteer any critical information in the interview[,] which lasted just under an hour." *Id.*

[8]The 1990s victims were sisters whose female sexual organs had been digitally penetrated by Darling at his house when they were under fourteen years old; neither sister had realized that he had been sexually abusing both of them until the older sister said something about it to the younger sister. *Darling v. State* (*Darling II*), 262 S.W.3d 913, 917–19 (Tex. App.—Texarkana 2008, pet. ref'd) (op. on reh'g).

8

substantial rights with regard to the 1990s cases involving the two sisters, the complainants here were stepsisters who each gave concrete testimony about sexual abuse and whose victimization occurred in a relatively proximate timeline from 2000 in Linda's case to 2002 through around 2009 in June's case. *See Darling II*, 262 S.W.3d at 919.

This case is also more like *Casey*, which Riemer attempted to distinguish when arguing in support of his motion to sever in the trial court. *See* 349 S.W.3d at 827. In *Casey*, the appellant was found guilty of one count of continuous sexual abuse of a child and three counts of aggravated sexual assault of a child. *Id.* He argued on appeal that the trial court had erred by denying his pretrial motion to sever one of the aggravated sexual assault counts in the indictment because the offense alleged in that count involved a different child and because the alleged behavior was too far apart in time to constitute part of the same criminal episode. *Id.* at 830. Almost two years separated the alleged assault of the other child from the earlier and later offenses involving the primary complainant. *Id.* at 830, 832. The other child went to school with the primary complainant and had experienced a "one-time deal" involving a similar type of treatment as that experienced by the primary complainant when she and the primary complainant were at the appellant's home together. *Id.* at 831.

The El Paso court concluded that the trial court could have reasonably decided that all of the offenses alleged in the indictment were part of the same criminal episode because they were the repeated commission of the same or

9

similar offenses and because penal code section 3.01 does not require that all of the offenses arising out of the same criminal episode occur within any particular time frame. *Id.* Likewise, the trial court here could have reasonably concluded that the stepsisters had experienced similar offenses regardless of a two-year separation. *See id.*

## B. Unfair Prejudice

Riemer further argues that even if the offenses were part of the same criminal episode, the trial court still erred by denying the motion to sever because he showed that there would be unfair prejudice as a result of joinder. Specifically, Riemer complains that he was unfairly prejudiced by the State's being allowed to bolster the complainants' testimonies, and he attempts to distinguish the treatment of prejudice in *Casey*.

With regard to prejudice in *Casey*, the El Paso court pointed out that in a case involving multiple felony counts of alleged sex offenses against children, the legislature has balanced competing interests and has determined that the defendant is entitled to severance only if he can show "unfair" prejudice—i.e., some type of prejudice beyond that which he would automatically face in any case in which felony counts are joined. *Id.* at 832; *see also Hicks v. State*, Nos. 07-12-00256-CR to 07-12-00276-CR, 2013 WL 4711223, at *2 (Tex. App.—Amarillo Aug. 28, 2013, no pet.) (mem. op., not designated for publication) (noting that this rule exists not only because the legislature believed that these types of offenses were particularly likely to be repeatedly committed against a

child victim or to be committed against multiple child victims but also to avoid forcing child victims to undergo multiple trials).[9] Riemer has failed to show some type of prejudice beyond that which he would automatically face when felony counts are joined. *See Casey*, 349 S.W.3d at 832.

Further, with regard to his bolstering complaint, Riemer's defensive theory was that Linda and June were not credible and that their stories about how the abuse started were too coincidental to not be suspicious. Thus, even if the cases had been tried separately, it is likely that in each case the two complainants' testimonies would have been admissible to refute the defensive theory of fabrication. *See Salazar*, 127 S.W.3d at 365–66. Therefore, we overrule Riemer's two points.

---

[9]In *Hicks*, in contrast to the case before us, the Amarillo court concluded that the trial court abused its discretion by declining to sever an indecency charge involving the appellant's daughter from twenty charges involving child pornography when none of the downloaded pornographic images were of the daughter, no one suggested that the appellant had taken any of the photographs or knew any of the children depicted in them, and there was no risk that the daughter would be required to undergo multiple trials. 2013 WL 4711223, at *1, *3.

## IV.  Conclusion

Having overruled Riemer's two points, we affirm the trial court's judgments.

PER CURIAM

PANEL:  MCCOY, DAUPHINOT, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 12, 2013