

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00170-CR
_____

CHRISTOPHER J. VARGAS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 52,421-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

MEMORANDUM OPINION

A Gregg County grand jury returned two indictments against Christopher J. Vargas: (1) indecency with a child by sexual contact regarding one victim, which is the subject of his appeal in companion cause number 06-24-00171-CR, and (2) aggravated sexual assault of a child under fourteen years old regarding a second victim, which is the subject of this appeal.[1] The victims are sisters, a fact that bears on the question presented by this appeal. In a consolidated trial, a Gregg County jury convicted Vargas of both offenses. The jury assessed his sentences as ten years' imprisonment for indecency with a child by sexual contact and forty years' imprisonment for aggravated sexual assault of a child under fourteen years old, and the trial court ordered that the sentences be served concurrently.

Vargas asked the trial court to try the cases separately. The trial court denied that request. Vargas appeals that decision. We affirm that decision. In this opinion, we affirm the judgment of conviction regarding aggravated sexual assault of a child under fourteen years old.

## I.      Summary of the Dispute

Vargas stood accused of indecency with a child by sexual contact in 2008 regarding J.G.,[2] who was born in 2000. *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (d) (a second-degree felony). Vargas stood accused of aggravated sexual assault of a child under fourteen years old in

---

[1]The indictments are listed chronologically by the date of offense. However, they were appealed in reverse chronological order. Therefore, in this appeal, we address the conviction for aggravated sexual assault of a child under fourteen years old. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B). Via a separate opinion in our cause number 06-24-00171-CR we address the conviction for indecency with a child by sexual conduct. *See* TEX. PENAL CODE ANN. § 21.11(a)(1).

[2]We use initials for anyone who was a minor at the time of the offenses. *See* TEX. R. APP. P. 9.10.

2

2010 regarding J.G.'s sister, T.G., who was born in 2002.  *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B), (e) (a first-degree felony).

The State asserted that the offenses were part of the same criminal episode and asked that the cases be tried together.  *See* TEX. PENAL CODE ANN. § 3.02(a) ("A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode."). By statute, "criminal episode" is defined as

> the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> > (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
> >
> > (2) the offenses are the repeated commission of the same or similar offenses.

TEX. PENAL CODE ANN. § 3.01.

Vargas asked that the cases be tried separately.  Vargas asserted that the indictments alleged separate criminal episodes and that, even if the alleged offenses did constitute a single criminal episode, he still had a right to severance.  *See* TEX. PENAL CODE ANN. § 3.04(a) (Supp.) ("Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses.").

However, by statute, the right to severance is not absolute.  TEX. PENAL CODE ANN. § 3.04(c) ("The right to severance under this section does not apply to a prosecution for offenses described by Section 3.03(b) or (c) unless the court determines that the defendant or the state

3

would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires.").

At the pretrial hearing on the motion to consolidate, the State argued as follows:

Your Honor, these two cases involve two sisters. They were about the same age, both make allegations of the defendant touched on them inappropriately. One claims that it did go even further than indecency and went to aggravated sexual assault of a child. Both children were approximately the same age when he began perpetrating on the children.

The facts, the witnesses, are all the same in the case that arose out of the same investigation. The offense report, all of that is the exact same, and so we would request that they be consolidated and be able to be tried together.

Vargas responded:

Judge, I filed an objection and ultimately would request severance of the cases formally.

These, based on the dates and the indictment, they happened years apart, and it's -- I don't think that this is derived as the same criminal episode or scheme, and there are two separate, the same cases, I think it would be highly prejudicial to my client when -- be harmful to the defense's case for them to be tried together.

Once the trial court granted the State's motion to consolidate, Vargas moved to sever by stating, "Judge, just for record purposes, now that they are consolidated, we have to move for severance of the cases."

Both Vargas and the State urge that the record, *as developed at trial*, supports their position concerning the trial court's *pre-trial* rulings on consolidation and severance. We hesitate to review a trial court's decision based on information that developed after the decision was made. However, neither Vargas nor the State complain of the other's use of trial testimony.

4

Likewise, neither Vargas nor the State assert that the outcome would be different were we to look solely to the information before the trial court at the pretrial hearing.

## II.     Standard of Review

A trial court's decision to grant or deny a request to sever is reviewed for an abuse of discretion. *Salazar v. State*, 127 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2004, pets. ref'd). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

### A.     Same Criminal Episode

"A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a). Generally, a defendant has a right to sever (i.e., a separate trial for each offense). TEX. PENAL CODE ANN. § 3.04(a); *see also Llamas v. State*, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000) (stating a defendant has "absolute discretion," quoting *Warmowski v. State*, 853 S.W.2d 575, 578 (Tex. Crim. App. 1993), to decide whether to request "mandatory severance"). A "'criminal episode' means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property" when "the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common

scheme or plan" or when "the offenses are the repeated commission of the same or similar offenses." TEX. PENAL CODE ANN. § 3.01.

"Under [Section] 3.04(c), the defendant does not have the right to receive separate trials of multiple . . . offenses arising out of the same criminal episode unless he can show that he would be *unfairly* prejudiced by a single trial." *Prudhomme v. State*, 47 S.W.3d 683, 691 (Tex. App.—Texarkana 2001, pet. ref'd) (emphasis added).

Even though Vargas escalated his offensive conduct and sexually assaulted each victim differently, the sexual assaults were committed in the same criminal episode.

The indicted offense for T.G. was aggravated sexual assault of a child:

> [O]n or about the 26th day of April, 2010, . . . CHRISTOPHER J. VARGAS . . . did then and there intentionally or knowingly cause the sexual organ of T.G., a child who was then and there younger than 14 years of age, to contact the mouth of Defendant.

The indicted offense for J.G. was indecency with a child by sexual contact:

> [O]n or about the 12th day of September, 2008, . . . CHRISTOPHER J. VARGAS . . . did then and there with the intent to arouse or gratify the sexual desire of Defendant, intentionally or knowingly engage in sexual contact with J.G. by touching the genitals of J.G., a child younger than 17 years of age.

Many things were the same for both victims. The victims are sisters. Vargas is the ex-husband of their aunt, and the father of their aunt's children. Vargas babysat both victims at his home while the victims' mother worked. Vargas sexually assaulted them when they were around the same age: T.G. was in second or third grade or around eight years old when things changed, and J.G. was about ten years old when the abuse occurred.

The relationship with Vargas and the sisters was normal at first. They would play hide-and-seek, and he would tickle them. K.G., an older sister of T.G. and J.G., confirmed that Vargas's inappropriate behavior happened all the time while in front of all three of them. "There was always wrestling. Sometimes, the hand placement would be inappropriate, and his hands were often in his pants and, like, under blankets as well, touching in that area." Vargas wrestled with all three sisters. K.G. testified that Vargas frequently would put his hands down his pants when the sisters were doing "anything."

T.G. was in second or third grade when things changed. T.G. testified, "He would always grab, like, the inside of my thigh, and it made me feel really uncomfortable." T.G. testified that the abuse got worse. The first time was when she was playing with her sisters at Vargas's house. Vargas called her into the living room and told her to sit by him. He pulled her closer. He grabbed her hand and started moving her hand on his penis. During the summer, the sisters would spend the night at Vargas's house. T.G. testified that Vargas woke her up and took her to his daughter's room. She stated that he pulled her underwear down and "placed his tongue on [her] vagina." Vargas did that same thing four to six times.

With J.G., Vargas, while playing hide-and-seek, pulled her "into the closet to hide with him, and he would rub [her] thighs and touch on [her] breasts." On other occasions, she stated that Vargas "tackle[d] [her] onto the bed, and basically, [she] was, like, kind of straddled or, like, against his penis, and it was hard." She continued, "And, like, he kind of, like, moved me to where, like, he would feel movement on it." She testified that the last time was when, during the middle of the night after she had fallen asleep on the couch alone, Vargas touched her vagina and

7

started "fingering" her while he masturbated and ejaculated. Vargas told J.G. she "would be in trouble" if she told anyone and "that no one would believe [her]." J.G. was scared, looked the other way, curled up in a ball, and started crying. Until then, Vargas had only touched her on the outside of her clothes, which was around five times.

J.G. told her mother, but her mother did not believe her. J.G.'s mother was on drugs. When J.G. told her mother again about the abuse she suffered from Vargas, T.G. was present, and T.G. disclosed that she had been sexually assaulted by Vargas as well.

Neither victim was specific about when the sexual assaults occurred. J.G. was ten years old when Vargas started touching her uncomfortably. T.G. said she was around eight years old or in the second or third grade when things changed and Vargas started touching her uncomfortably. Even if the offenses occurred years apart, they were still part of the same criminal episode. *See Casey v. State*, 349 S.W.3d 825, 831 (Tex. App.—El Paso 2011, pet. ref'd) ("Section 3.01 does not require that all the offenses arising out of the same criminal episode occur within any particular time frame.").

Although different offenses and manner and means, and timelines were slightly different, the same motive was sexual gratification, and Vargas committed all of the inappropriate acts while babysitting the victims and while other people were in the home.

Therefore, the record reflects sufficient evidence to meet the requirements for either definition of "criminal episode," i.e., "connected or constitute a common scheme or plan" or "the

offenses [sought to be joined] are the repeated commission of the same or similar offenses." TEX. PENAL CODE ANN. § 3.01(1), (2).[3]

## B. Unfairly Prejudiced

Vargas argues that the joinder of these offenses made it appear that he was "a criminal [in] general[]." He also argues that other fact witnesses testified and that those witnesses did not provide direct evidence.

"The right to severance under this section does not apply to a prosecution for" sexual offenses including indecency with a child and aggravated sexual assault of a child "unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires." TEX. PENAL CODE ANN. § 3.04(c) (Supp.); *see also* TEX. PENAL CODE ANN. § 3.03(b) (Supp.) (listing offenses for which automatic right to severance is not applicable). "For these types of offenses, there is no presumption that the joinder of cases with different child victims is unfairly prejudicial, . . . and the defendant bears the burden of showing how he would be unfairly prejudiced through consolidation . . . ." *Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.) (citations omitted). A defendant can establish unfair prejudice by showing "some type of prejudice beyond that which a defendant would

---

[3]Vargas relies on *Darling v. State*, 262 S.W.3d 920 (Tex. App.—Texarkana 2008, pet. ref'd). *Darling*'s sister opinion provides more detail as to why those opinions are inapplicable here because the offense in *Darling* related to an offense that occurred before September 1, 1997, and the pre-1997 amendments to Section 3.04 required a "direct linkage between the commission of this indecency crime and those earlier time periods." *Darling v. State*, 262 S.W.3d at 926; *see Darling v. State*, 262 S.W.3d 913, 916 (Tex. App.—Texarkana 2008, pet. ref'd) ("However, the current version of Section 3.04 applies only to crimes that were committed *after* September 1, 1997, the effective date of the current statute." (citing Act of May 21, 1997, 75th Leg., R.S., ch. 667, § 3, 1997 Tex. Gen. Laws 2250, 2252 (effective Sept. 1, 1997) (amended 2005) (current version at TEX. PENAL CODE § 3.04)).

automatically face in any case in which felony counts are joined." *Casey*, 349 S.W.3d at 832; *Hodge*, 500 S.W.3d at 622 (quoting *Riemerv v. State*, Nos. 02-12-00613-CR, 02-12-00514-CR & 02-12-00615-CR, 2013 WL 6565057, at *4 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (per curiam) (mem. op., not designated for publication)).

The Austin Court of Appeals stated,

> The types of prejudice inherent in any trial of joined counts include the risk of consecutive sentences; "that the jury may convict a 'bad man' who deserves to be punished—not because he is guilty of the crime charged but because of his prior or subsequent misdeeds"; and that "the jury may infer that because he committed some of the alleged crimes, he probably committed all of them."

*Diez v. State*, 693 S.W.3d 899, 920 (Tex. App.—Austin 2024, pet. ref'd) (quoting *Llamas*, 12 S.W.3d at 471). Here, both indicted offenses are enumerated sexual offenses against children. Vargas argues that the joinder was unfairly prejudicial because it made him appear to be "a criminal [in] general[]." Vargas's arguments are those solely inherent with the joinder of any felony offense. This argument is not any different than the usual "types of prejudice inherent in any trial of joined counts." *Id.* Even if the offenses were tried separately, the offenses against the other victim would be admissible in each victim's separate trial through Section 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 § 2(b) (Supp.). Had the cases been tried separately, much of the same evidence would have been admitted in the separate trials. *See Werner v. State*, 412 S.W.3d 542, 548 (Tex. Crim. App. 2013) (observing, in the context of a harm analysis, that "the overlap of evidence was, if not complete, at least very substantial").

We overrule Vargas's sole point of error.

## III. Conclusion

We affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: May 16, 2025
Date Decided: August 13, 2025

Do Not Publish

11