

# NUMBER 13-17-00650-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

XAVIER PEREZ,                                                    Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 445th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

A jury convicted appellant Xavier Perez of six offenses:   Counts 1 and 2 were for sexual assault, a second-degree felony; Count 3 was for prohibited sexual conduct, a third-degree felony; Count 4 was for continuous sexual abuse of a minor, a first-degree felony; Count 5 was for indecency with a child by sexual contact, a second-degree felony; and Count 6 was for sexual assault of a child, a second-degree felony.   *See* TEX. PENAL

CODE ANN. §§ 21.02; 21.11(a)(1); 22.011(a)(2), 25.02.

By five issues, Perez contends the trial court abused its discretion when it: (1) consolidated two indictments concerning separate complainants, his stepdaughters L.S. and M.S.[1]; (2) granted a motion in limine; (3) admitted evidence regarding extraneous bad acts; and (4) denied his motion to suppress. Perez also contends he (5) received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

### A. The Indictment

The State initially filed two indictments against Perez, one for each of the complainants. The indictment in trial court cause number 2016-DCR-02078 listed the offenses against his stepdaughter L.S. and encompassed three counts. Count 1 alleged Perez committed sexual assault by causing the sexual organ of L.S. to contact Perez's sexual organ without L.S.'s consent. *See id*. §§ 22.011(a)(1)(C). Count 2 alleged Perez committed sexual assault by causing the penetration of the mouth of L.S. with Perez's sexual organ, without L.S.'s consent. *See id*. § 22.011(a)(1)(B). Count 3 alleged Perez engaged in sexual intercourse with L.S., a person he knew to be his stepdaughter. *Id*. § 25.02.

The indictment in trial court cause number 2016-DCR-02079, listing the offenses against M.S., also had three counts. Count 4 alleged that, during a period that was thirty or more days in duration, when Perez was seventeen years of age or older, he committed

---

[1] We use initials to protect the identity of complainants in sexual assault cases. *See Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

2

two or more acts of sexual abuse against M.S., a child younger than fourteen years of age, by touching her genitals and/or knowingly causing his sexual organ to contact M.S.'s sexual organ. *See id*. § 21.02. Count 5 alleged that Perez touched the breast of M.S., a child then younger than seventeen years of age. *See id*. § 21.11(a)(1). And Count 6 alleged that Perez intentionally or knowingly caused the sexual organ of M.S., a child younger than seventeen years of age, to contact the sexual organ of Perez. *See id*. § 22.011(a)(2).

The State filed a motion to consolidate the indictments, which the trial court granted without hearing. Perez later filed a motion to sever the cases, which the trial court denied. The State ultimately tried the charges as to both complainants in the same case.

## B. Trial Testimony of L.S.

At trial, L.S. testified that she moved from Mexico to the United States to live with her mother, M.A., and her younger sister, M.S., when she was seventeen years old. Her mother was married to Perez, and the family lived in a small, one-room home on five acres in rural Los Fresnos, Texas. Perez asked L.S. to help him with his work: they would mow lawns, feed and water farm animals, and gather tools. L.S. said that the first time Perez sexually assaulted her was after returning from a job mowing lawns. L.S. testified that Perez pulled his red Ford Explorer over to the side of a road covered by trees. He opened her passenger door, pushed her down on her seat, held her hands with his hands, and sexually assaulted her while standing outside, forcing his penis into her vagina. Perez allegedly told L.S. that if she told her mother, he would call the police and they would deport her, her mother, and her younger sister back to Mexico. L.S.

3

testified that Perez continued sexually abusing her every few days, usually in his vehicle. Perez also demanded oral sex from L.S. and performed oral sex on her. He explained to L.S. that her mother was "cold" and "she didn't want to have sexual relations," so that is why he needed L.S.

L.S. also shared that she saw Perez rape her younger sister, M.S., when M.S. "was about 11 or 12." L.S. reported that she walked to the chicken coop on their property and she saw her sister lying naked on some food containers while Perez was standing up. L.S. testified that she saw Perez's "penis was in her vagina." Perez again threatened both girls, saying that he would put them in jail.

L.S. further recalled that, after celebrating Perez's birthday party one year, he forced L.S. and M.S. to have sex with him together. According to L.S., he told the girls "that's what he wished for his birthday." L.S. later became pregnant with Perez's child. Perez told M.A. that the father of the baby was his son from a prior relationship, Joel. While pregnant, L.S. recalled that her mother caught Perez sexually assaulting L.S. M.A. had just come in from feeding the chickens and, according to L.S., reacted "badly." L.S. began crying and she said Perez tried to convince M.A. that "nothing was happening" and to "calm down."

When L.S.'s son was born, she listed Perez as the father of her child on his birth certificate. L.S. testified that Perez introduced the baby as his and M.A.'s child.

L.S. and M.S. eventually confronted M.A. again about the abuse. When M.A. confronted Perez, M.A. explained that L.S. had previously been abused by her biological father. Perez initially denied the abuse, but later said that L.S. loved him, wanted a

4

relationship with him, and wanted to have a child with him.   L.S. eventually left the home, but Perez forced her to leave her son at home with him and M.A.

### C. Trial Testimony of M.S.

M.S. was eighteen when she testified at trial.   She testified that she came to the United States from Mexico when she was in first grade.   M.S. claimed that Perez first sexually abused her when she was eleven years old in the family's tool shed.   She said she was helping him pick up tools when she turned around and saw that Perez's pants were down.   He then picked her up, laid her down on a bucket, pulled down her pants, and sexually assaulted her.   After, he told her not to tell M.A., her friends, or L.S. about the incident.   He also told her not to write about it in her diary.

M.S. said that the abuse continued, but with L.S. as well.   M.S. testified that Perez would offer to take the girls to eat pizza, but before they went to the restaurant, he would drive to a rural part of their property, park his truck, and take turns having sex with her and L.S.   These instances occurred from when she was thirteen to seventeen years old.   M.S. also testified that Perez would at times touch her breasts and vagina, both over and under her clothing, when they were alone in his truck driving somewhere.

M.S. recalled an instance when she was sixteen when Perez told her he wanted to take a shower.   Perez then pulled her by her wrist into the restroom with him, took off his and her clothes, and showered with her.   He then had sex with her on his and M.A.'s bed.   M.S. also stated they would have sex on his and M.A.'s bed when M.A. was not home.   M.S. further claimed that Perez demanded oral sex from him.

5

When she was seventeen, M.S. finally told her mother. M.S. then moved out of the house to marry her high school boyfriend.

### D. Trial Testimony of M.A.

M.A. testified that Perez was initially kind to her and her daughters, but that his behavior soon changed. She testified that he liked to be "in control" and would insult her or her daughters when they did not clean the home or feed their farm animals properly.

M.A. testified that she learned Perez was sexually abusing L.S. when she found him assaulting her when L.S. was pregnant. She stated that Perez told her the reason he was with L.S. was because she was cold or frigid: he told her she was a "block of ice." He told her he would no longer have a sexual relationship with L.S. and threatened M.A., stating that he knew "the laws well" as well as several law enforcement officers.

Initially, Perez told M.A. that the father of L.S.'s son was his son, Joel. He told the family that Joel could not accept paternity because Joel was married to another woman with another family, so Perez told M.A. "we're going to give [the baby] my last name so that we can raise him."

### E. Motion to Suppress

Perez moved to suppress evidence of an oral statement he gave to police. The record shows that the court heard Perez's motion to suppress on the third day of trial, outside the presence of the jury. The only witnesses during this hearing were Investigator Rodrigo Almanza of the Cameron County Sheriff's Office and Perez.

Investigator Almanza stated that he works in the criminal investigation division, investigating crimes such as homicide, sexual assaults, and thefts. Investigator Almanza

6

first spoke to L.S., who contacted the police about Perez's history of sexual assaults with her after an incident regarding her son at the local Head Start program. L.S. told Almanza that Perez had violated both her and her younger sister M.S. for years. Investigator Almanza then spoke to M.S., whom he described as afraid. "It took her a while to calm down and start—she was kind of shaking and purple." M.S. confirmed that Perez had abused her and threatened her with jail or immigration consequences if she told anyone about his sexual abuse.

Investigator Almanza explained that he then went to Perez's home to arrest him. After Perez was transported to the sheriff's office, Investigator Almanza confirmed that he read Perez his *Miranda* warnings and gave a document to Perez wherein Perez initialed that he understood his legal rights. Investigator Almanza testified that he did not coerce, threaten, or make any promises to Perez in exchange for a confession. He also testified that he did not deny Perez basic necessities like the restroom, food, or water. He admitted that he told Perez that police had DNA evidence and text messages to prove the allegations of sexual assault, even though they did not. He said that the use of deceit was a common police "tactic" used in interrogations to gather evidence.[2] Investigator Almanza testified that Perez admitted to having sexual relations with L.S. but immediately asked for an attorney when the questions turned to his relationship with M.S. The interrogation stopped at this point.

---

[2] "Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Creager v. State,* 952 S.W.2d 852, 856 (Tex. Crim. App. 1997).

7

Perez also testified outside the presence of the jury. Perez's rendition of the interrogation was different. He testified that he asked several times what he was being charged with and never received an answer. He also reported that he was left in a cold room by himself for thirty minutes, handcuffed. He asked to go to the restroom twice because of his prostate problems and was not able to go. Notably, Perez testified that he spoke to Investigator Almanza for a lengthy period of time before he was ever informed of his *Miranda* rights. After he was read his *Miranda* rights, he claimed the investigator began recording the interrogation. Perez also testified that Investigator Almanza was "pointing his gun" stating, "Hey, we've got everything, I've got DNA, I've got witnesses . . . You better say what you have to say and what I want you, otherwise, you're going to go for life." Perez stated that he was scared. He admitted he told the officer that he had a sexual relationship with L.S. and that the baby was his child. At a certain point, he asked for an attorney and the interrogation stopped.

The court orally denied the motion to suppress. Investigator Almanza and Perez then testified again, but this time in front of the jury. Their testimony was the same in substance.

## F. The Trial Court's Findings of Fact & Conclusions of Law

On the final day of trial, the trial court made the following findings of fact and conclusions of law regarding Perez's custodial interrogation:

I.

The Court finds that on the 9th day of September, 2016, Defendant Xavier Perez was arrested by Investigator Rodrigo Almanza.

8

II.

The Court finds that upon being taken to the Cameron County Sheriff's Office and prior to the statement but during the recording, Defendant Xavier Perez was advised of his rights and given certain warnings that comported in all respects with the Constitution and laws of the United States of America and the State of Texas.

III.

The Court further finds that after being so duly warned, Defendant Xavier Perez made an oral statement which was inculpatory to said Defendant. Investigator Almanza testified that he did not threaten or coerce the Defendant, or promise him anything in exchange for his oral statement.

IV.

The Court further finds from viewing, in its totality, all the circumstances surrounding the making of this statement, that Defendant Xavier Perez, at the time of the making thereof, understood his rights of which he had been advised, and further that Defendant knowingly and intentionally waived those rights.   The totality of the circumstances includes, but is not limited to:   Defendant's apparent intelligence, Defendant's ability to articulate his thoughts (be they truthful or perjurious), the information within the knowledge of Defendant as to the nature of the crime and the investigation thereof, the knowledge on the part of Defendant as to his right to counsel and his right to avail himself of counsel as well as his right to continue or discontinue any interview with law enforcement officials (which Defendant did), the degree, if any, prior to making the instant statement, the method of the interrogation used by the officer, including the duration, location, and unique technique of questioning.

V.

The Court finds that the questions permitted of Defendant Xavier Perez regarding the truth and content of the statement (State's Exhibit No. 22) were permitted not to prove the truth of that exhibit but to assist the Court, if it did, (which it did) in testing the Defendant's credibility as a witness for himself in the *Jackson v. Denno* hearing.   [*See* 378 U.S. 368 (1964)].

VI.

The Court finds no credible evidence that Defendant Xavier Perez was unduly frightened at the time of the interview.

VII.

The Court finds that the degree to which Defendant Xavier Perez was in a state of fright, if he was, was not attributable to the acts or omissions of the custodial authorities.

VIII.

The Court finds that the statement (State's Exhibit No. 22) was in all things voluntary and was made by Defendant Xavier Perez with full knowledge of his rights and the consequences of making such statements.

BASED ON THE FOREGOING FINDINGS, the Court concludes that the oral confession of Defendant Xavier Perez, of which suppression is sought, is ADMISSIBLE and Defendant's Motion to suppress is DENIED.

## G. The Verdict

The jury found Perez guilty of all charges and assessed punishment. For Counts 1 and 2, the jury assessed punishment at seven years' incarceration for each count, probated, with no fine. For Count 3, the jury assessed three years' incarceration, probated, and no fine. For Count 4, the jury assessed thirty-two years' incarceration in the Texas Department of Criminal Justice–Institutional Division and assessed a fine of $10,000. On Count 5, the jury assessed a ten-year sentence and a $3,000 fine. And on Count 6, the jury assessed seven years' incarceration and a $2,000 fine. The trial court ordered the sentences to run concurrently.

Perez appealed.

10

## III. CONSOLIDATION OF INDICTMENTS

By his first issue, Perez complains that the trial court wrongfully granted the State's motion to consolidate the indictments and should have granted his motion to sever. As sub-issues, Perez complains that the State's motion to consolidate did not submit any evidence, affidavits, or verified pleadings and that the trial court should have granted a hearing on this issue.

### A. Applicable Law

"A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." TEX. PENAL CODE ANN. § 3.02(a). Texas Penal Code § 3.04, concerning the severance of offenses for the purpose of trial, provides as follows:

> (a) Whenever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses.
>
> . . .
>
> (c) The right to severance under this section does not apply to a prosecution for offenses described by Section 3.03(b) unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the judge may order the offenses to be tried separately or may order other relief as justice requires.

See id. § 3.04. Section 3.03(b) of the penal code specifically recognizes sexual assault offenses against children. See id. (listing penal code §§ 33.021 (online solicitation of a minor); 21.02 (continuous sexual abuse of a young child or children); 21.11 (indecency with a child); 22.011 (sexual assault); 22.021 (aggravated sexual assault); 25.02 (prohibited sexual conduct); 43.25 (sexual performance by a child)).

11

"A trial judge's failure to grant a mandatory severance under Section 3.04 is subject to a harm analysis, and the error is harmless if it did not adversely affect the defendant's substantial rights." *Scott v. State*, 235 S.W.3d 255, 257 (Tex. Crim. App. 2007). "To judge the likelihood that harm occurred, appellate courts must consider everything in the record including all the evidence admitted at trial, the closing arguments, and . . . the jurors' comments during voir dire." *Id*.

**B. Analysis**

The State filed a "Motion to Consolidate and Join Prosecutions." In its motion, the State contended that each of the indictments charged Perez with offenses related to child sexual abuse. The State proffered that "the facts giving rise to the above-mentioned cause numbers arise from the same criminal episode, and therefore may be properly joined at the election of the State pursuant to Section 3.02 of the Texas Penal Code." *See* TEX. PENAL CODE ANN. § 3.01 (defining the term "criminal episode" to mean either "the offenses [sought to be joined] are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a scheme or plan" or "the offenses [sought to be joined] are the repeated commission of the same or similar offenses").

We agree that the trial court did not err in joining the indictments or denying Perez's motion to sever. "The right to a severance under the current version of Section 3.04 is absolute, *except for joinder of sexually based offenses that are governed by Section 3.03 of the Texas Penal Code.*" *Darling v. State*, 262 S.W.3d 920, 926 (Tex. App.—Texarkana 2008, pet. ref'd) (quoting *Scott v. State,* 235 S.W.3d 255, 257–58 (Tex. Crim.

12

App. 2007)) (emphasis in original).   Here, Perez was charged with offenses listed in § 3.03(b) and he did not show he was "unfairly prejudiced" by the joinder.   *See* TEX. PENAL CODE ANN. § 3.04(c).   Because the statute authorized the trial court to consolidate these indictments and did not require severance, we conclude that no error occurred.

Perez urges this court to hold otherwise, citing *Darling v. State* as authority for the proposition that severance is appropriate in this case.   *See* 262 S.W.3d at 923.   We find *Darling* to be distinguishable.   In *Darling*, the defendant sought to sever two indictments: one alleged sexual assault crimes against multiple young women in 1993-95, and another alleged a crime against one young woman in 2004.   *Id*.   The instances were ten years apart.   *Id*.   The evidence on the aggravated sexual assault offenses from 1993-95 was "corroborated and compelling" while the evidence from the 2004 incident was vague and circumstantial.   *Id*.   In the latter case, "the young girl testified that Darling 'touched' her only once and did not detail how or where he touched her, or provide any information to suggest that this single touch was in any way indecent."   *Id*. at 921.   Notably, the court held that the two indictments involved a "different manner of commission, involved a different degree of severity, and involved different victims. There was no evidence adduced at trial to suggest any direct linkage between the commission of this indecency crime and those earlier time periods."   *Id*. at 926.

Here, the alleged crimes against L.S. and M.S. occurred during the same time frame, alleged similar acts of sexual misconduct, and were at the same location (the family's rural property).   Some of the alleged acts even occurred with both women at the same time.   Accordingly, we conclude that *Darling* is inapposite to this case.

13

Regarding Perez's sub-issues that the State did not submit any evidence, affidavits, or verified pleadings to support its motion to consolidate, Perez cites no authority showing that the code of criminal procedure requires this, and we find none. Further, regarding Perez's complaint that the trial court granted the motion to consolidate without a hearing, we note that the trial court allowed Perez to urge his motion to sever during pre-trial motions heard on August 29, 2017. The motion was denied.

We overrule Perez's first issue.

## II. MOTION IN LIMINE

By his second issue, Perez complains the trial court erred when it granted the State's motion in limine requiring the parties to approach prior to any questioning regarding L.S.'s past sexual behavior. Specifically, Perez argues that his son, Joel Perez, should have been allowed to testify regarding his alleged sexual relationship with L.S.

### A. Applicable Law

If the trial court grants a pre-trial motion in limine, counsel must still object when the subject is raised during trial and secure an adverse ruling from the trial court. *See West v. State*, 790 S.W.2d 3, 4 (Tex. App.—San Antonio 1989, pet. ref'd). Otherwise, error is not preserved. *See id*.

Texas Rule of Evidence 412 is also relevant to Perez's second issue on appeal. This rule of evidence provides as follows:

> (a) In General. The following evidence is not admissible in a prosecution for sexual assault, aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault:

14

> (1) reputation or opinion evidence of a victim's past sexual behavior; or
>
> (2) specific instances of a victim's past sexual behavior.
>
> . . . .
>
> (b) Procedure for Offering Evidence. Before offering any evidence of the victim's past sexual behavior, the defendant must inform the court outside the jury's presence. The court must then conduct an in camera hearing, recorded by a court reporter, and determine whether the proposed evidence is admissible. The defendant may not refer to any evidence ruled inadmissible without first requesting and gaining the court's approval outside the jury's presence. . . .

TEX. R. EVID. 412.

### B. Analysis

Perez complains that the trial court abused its discretion when it did not allow Joel Perez to testify about his alleged sexual relationship with L.S. When counsel for Perez approached the bench prior to Joel taking the witness stand, the court clearly ruled that Joel could "not testify as to any sexual conduct with [L.S.]." Perez ultimately chose not to call Joel to the witness stand. The following exchange occurred at the bench:

THE COURT: Let's have Joel testify. He cannot testify as to any sexual contact with her. I will not allow that.

COUNSEL: Yeah, then it wouldn't be worth calling him because there's nothing he can tell other than he's had a relationship. That's it.

THE COURT: I'm not going to allow that.

Perez did not object on the record when the trial court made the evidentiary ruling limiting Joel's testimony, nor did he object when the court failed to hold an "in camera"

15

review.  *See* TEX. R. APP. P. 33.1; *see also* TEX. R. EVID. 412(b).  Further, he did not make an offer of proof regarding Joel's potential testimony.  See TEX. R. EVID. 103(c). In light of the foregoing, we conclude that Perez's second issue was not preserved for our review.  *See* TEX. R. APP. P. 33.1.

## III. ADMISSION OF EVIDENCE

Perez's third issue on appeal challenges the trial court's decision to allow both L.S. and M.S. to testify about Perez's alleged extraneous offenses.[3]

### A. Applicable Law

The admissibility of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.  *Tillman v. State*, 354 S.W.3d 425 (Tex. Crim. App. 2011).  Texas Rule of Evidence 404(b) provides that evidence of extraneous offenses, such as a "crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  *See* TEX. R. EVID. 404(b).  Article 38.37 of the Texas Code of Criminal Procedure, however, supercedes 404(b) and allows certain evidence of extraneous bad acts in sexual assault cases.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.37(b).  The statute specifically provides that

> *Notwithstanding Rules 404* and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

---

[3] The State filed its "Notice of State's Intention to Use Extraneous Offenses and Prior Convictions" on August 16, 2017, prior to trial.  *See* TEX. R. EVID. 404(b)(2).

16

*Id*. (emphasis added).

### B. Analysis

On appeal, Perez lodges three arguments about both M.S. and L.S. testifying in the same trial about Perez's alleged sexual misconduct with them: (1) that it was not a continuous episode; (2) that it violated Texas Rule of Evidence 404(b); and (3) the testimony was more prejudicial than probative in violation of Texas Rule of Evidence 403.

Regarding the first complaint that M.S. and L.S.'s alleged assaults were not "one continuous episode," this argument was addressed and overruled in Section II(b) of this opinion, *supra*, discussing the consolidation of the indictments. Concerning Perez's second complaint that the admission of the evidence violated Texas Rule of Evidence 404(b), the plain text of Texas Code of Criminal Procedure article 38.37(b) shows that evidence of extraneous sexual acts is admissible in certain cases involving child sexual abuse. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37(b); *see also Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) (holding that "the special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts"). Finally, regarding Perez's assertions that this evidence was more prejudicial than probative, we note that this objection was not lodged at trial. *See* TEX. R. APP. P. 33.1 (providing that a timely and specific objection must be made and followed by an adverse ruling to preserve error for review). Thus, this argument was not preserved for our review.

We overrule Perez's third issue.

## IV. MOTION TO SUPPRESS CUSTODIAL INTERROGATION

By his fourth issue, Perez claims the trial court erred in denying his motion to suppress his statement from the custodial interrogation.

### A. Applicable Law

We apply a bifurcated standard of review on motions to suppress, giving "almost total deference to a trial court's determination of historical facts" and reviewing de novo the court's application of the law of custodial interrogation. *See Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc) (explaining that we defer to the trial court "especially when the trial court's fact findings are based on an evaluation of credibility and demeanor").

### B. Analysis

Perez argues several facts in urging this issue. For example, he alleges that Investigator Almanza lied about having DNA evidence and text messages to support the State's case. Perez further asserts that he did not "knowingly, intelligently and voluntarily waive" his rights as set out in the *Miranda* warning. He further argues "the fact that the entire initial interaction by investigator and [Perez] is no[t] mentioned or recorded for review by this Court would lead a reasonable person to believe the entire reason it occurred was to breakdown the [Perez's] ability to understand his right to remain silent and convince him to waive his Constitutional rights."

Under our standard of review, though, we give almost total deference to the trial court's findings of fact in this case because they were based on evaluations of credibility.

18

*See Delafuente*, 414 S.W.3d at 177; *Carmouche*, 10 S.W.3d at 327–28; *Guzman*, 955 S.W.2d at 89.   Here, the trial court's finding of fact number 2 reported that, "Perez was advised of his rights and given certain warnings that comported in all respects with the Constitution and laws of the United States of America and the State of Texas."   Finding of fact number 4 also stressed Perez's intelligence, his ability to articulate his thoughts, his understanding of his rights to counsel and to continue or discontinue the interview, and the method of the interrogation used by Investigator Almanza, including the duration, location, and unique technique of questioning, to conclude that the statement complied with Fourth Amendment laws and protections.   Because we defer to the trial court when its fact findings are based on an evaluation of credibility and demeanor and its findings are supported by the record, we overrule this issue.   *See Guzman v. State*, 955 S.W.2d at 89.

## V.  Ineffective Assistance of Counsel

### A.  Standard of Review and Applicable Law

To prevail on an ineffective assistance claim, an appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).   "Unless [the] appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective."   *Lopez*, 343 S.W.3d at 142.   To satisfy the first prong, appellant must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.

19

*Id.* To prove prejudice, appellant must show there is a reasonable probability the result of the proceeding would have been different, that is, a probability sufficient to undermine confidence in the outcome. *Id.*

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142; *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly rooted in the record . . . ."). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When direct evidence is unavailable, we will assume counsel had a strategy "if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143; *see Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("In the face of an undeveloped record, counsel should be found ineffective only if his conduct was so outrageous that no competent attorney would have engaged in it."). We must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Id.*

### B. Analysis

Perez asserts that his trial counsel was ineffective because counsel failed to: (1)

obtain translations of documents wherein L.S. had allegedly wrongfully accused her biological father of sexual assault in Mexico; (2) argue Rule 412 as it pertained to other sexual activity; (3) prepare a proper record for introduction of Perez's statement; (4) object to the trial court's findings of fact and conclusions of law regarding Perez's statement; (5) object to the admission of certain extraneous offenses and "bad acts"; and (6) object to improper hearsay statement regarding M.S. and L.S.'s demeanor and mental state. We address each argument in turn.

### 1. Failure to Translate Documents

A review of the record shows that while Perez's attorney did not have certain documents from a Mexican criminal investigation translated, he did propose to have a Mexican investigator come testify. At one point, he informed the court that "My understanding is we have somebody—a live person, the investigator from the Mexican investigation. He was on the bridge[4] trying to get over here to testify about his personal knowledge of what occurred in Mexico. I'm trying to give him a chance to get here." Ultimately, the court learned that the Mexican investigator was not given permission to cross the border.

First, the trial court made clear that it would not admit certain translated documents into evidence. During a pre-trial hearing, the court ruled

> I do not know what they did [in Mexico] and the veracity of that information . . . I do not know if it was a proper investigation . . . If you had a judgment, then I have a different story because we're supposed to obviously honor judgments from other countries, but that's not what I have. I have an investigation that somebody did that is all hearsay. . . .

---

[4] Brownsville, Texas, where this trial was held in Cameron County, Texas, is a city that lies on the United States-Mexico border.

The court did, though, inform the parties that it would admit the testimony of the Mexican law enforcement official who conducted the investigation into evidence. The trial court concluded, "that's a different story. You're going to have somebody that actually investigated the situation. . . If you have a warm body here, that will be allowed."

Second, the fact that a witness was not allowed to cross an international border to testify is not the attorney's fault. Perez's counsel's continued efforts, as evidenced by the record, to get his witness onto the witness stand fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

### 2. Failure to Argue Rule 412 Regarding L.S.'s Other Sexual Activity

Perez also argues that his attorney failed to argue Texas Rule of Evidence 412 in regard to L.S.'s prior sexual activity. This allegation is at odds with the record. Perez's counsel tried several times to admit evidence of L.S.'s alleged prior sexual activity. For example, he tried to get Joel, Perez's son, to testify that he had a sexual relationship with L.S. and was the father of L.S.'s child. Further, counsel attempted to call the Mexican investigator to the witness stand. This person allegedly investigated a false outcry of L.S. in Mexico, alleging sexual abuse against her natural father. In the prior instance, the court did not allow Joel's testimony under Texas Rule of Evidence 412. *See* TEX. R. EVID. 412. And in the latter instance, the witness was unable to cross the United States-Mexico border. Perez's attorney's efforts in this matter more than adequately met the standard of reasonable legal representation. *See Strickland*, 466

U.S. at 689; *Lopez*, 343 S.W.3d at 142.

### 3. Failure to Prepare a Proper Record of Perez's Statement

Perez also claims that his attorney erred when he failed "to prepare a proper record in front of the jury for introduction of Defendant's statement instead of contesting the statement as per the Motion to Suppress." This decision appears to be trial strategy related to Perez's motion to suppress. "When the record is silent on the motivations underlying counsel's tactical decisions, the appellant usually cannot overcome the strong presumption that counsel's conduct was reasonable." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Here, counsel's actions were not "so outrageous that no competent attorney would have engaged in it." *See Goodspeed*, 187 S.W.3d at 392. In the absence of information explaining why counsel chose to challenge Perez's statement in the manner that he did, we defer to this decision-making and presume his conduct is within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

### 4. Failure to Object to the Findings of Fact & Conclusions of Law

Perez also complains that his attorney failed to object to the trial court's findings of fact and conclusions of law on his motion to suppress. However, Perez's issue on the motion to suppress was still preserved for our review. *See* TEX. R. APP. P. 33.1; *see also* TEX. R. EVID. 103(b) ("[W]hen the court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal."). In light of this, we cannot say that the failure to object to the findings of fact and conclusions of law fell below the reasonable standard of

legal representation.   *See Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

### 5. Failure to Object to the Admission of Certain Extraneous Offenses & Bad Acts

Again, Perez's claim in this instance is mistaken.   His counsel tried, for example, through the urging of his motion to sever, to limit the testimony regarding Perez's extraneous offenses and prior bad acts by making L.S. and M.S.'s trials separate.   We conclude that counsel's attempt to limit the above-referenced evidence fell within the wide range of legal competence.   *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142.

### 6. Failing to Object to Improper Hearsay Statement of M.S. and L.S.'s Demeanor and Mental State

Here, Perez argues that his attorney "failed to object to hearsay improper [sic] statements from witnesses pertaining to the demeanor of M.S. and L.S. and the investigator['s] belief as to the mental state."   Perez does not, however, cite to any specific witnesses or highlight which specific statements were improper—there are no citations to the record to prove this point.   Accordingly, we conclude that this sub-issue is inadequately briefed.   *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

### 7. Summary

To satisfy the first prong of *Strickland*, the appellant must prove by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms.   *Lopez*, 343 S.W.3d at 142.   None of the instances Perez cites rise to the level of deficient legal representation.

24

We overrule Perez's fifth and final issue.

## VI. Conclusion

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
10th day of October, 2019.